COCA-COLA BOTTLING CO. CONSOLIDATED AND REIDSVILLE TRANSACTION COR-
PORATION, INC., PLAINTIFFS v. DURHAM COCA-COLA BOTTLING CO., DEFENDANT

---

DURHAM COCA-COLA BOTTLING CO., PLAINTIFF v. COCA-COLA BOTTLING CO.
    CONSOLIDATED,   REIDSVILLE   TRANSACTION   CORPORATION,   INC.,
    REIDSVILLE COCA-COLA BOTTLING CO., R.S. FISH, TRUSTEE, U/W D.D.
    BUSICK, FRED D. BUSICK, JOHN O. BUSICK, II, WILLIAM E. BUSICK, BRONA B.
    FISH, AND KATHRYN B. McMICHAEL, DEFENDANTS

No. COA99-1369, No. COA99-1372

(Filed 29 December 2000)

**1. Declaratory Judgments— plaintiff not a party to con-
tract—cognizable interest**

   In a dispute over the purchase of a soft drink bottling
company, a third-party was not precluded from maintaining a
declaratory judgment action simply because it sought to deter-
mine the validity of a contract to which it was not a party.
Plaintiff has a cognizable interest under the alleged contract as
a result of having purportedly purchased one of the parties to
the contract.

**2. Declaratory Judgments— discretion to dismiss action**

   A declaratory judgment action arising from the sale of a soft
drink bottling company should have been dismissed where plain-
tiff, Consolidated, attempted to purchase the Reidsville Coca-
Cola Bottling Company and Durham contended that Reidsville
had already accepted its offer to purchase. A declaratory judg-
ment suit should not be used as a device for procedural fencing;
a defendant in a pending lawsuit should not be permitted to bring
a declaratory judgment suit involving overlapping issues in a dif-
ferent jurisdiction as a strategic means of obtaining a more
preferable forum. Moreover, priority should not necessarily be
given to a declaratory suit simply because it was filed earlier in
situations where two suits involving overlapping issues are pend-
ing in separate jurisdictions.

**3. Declaratory Judgments— not by natural plaintiff—forum
shopping—dismissed**

   A declaratory judgment action by Consolidated arising
from efforts to purchase a soft drink bottling company by
Consolidated and a competing company (Durham) should have
been dismissed where the issues were whether letters exchanged

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

between Reidsville (the company being bought) and Durham constituted a binding contract of sale; whether Reidsville breached its contract with Durham; and whether Consolidated tortiously interfered with a contractual relationship between Reidsville and Durham. The natural plaintiff is Durham since Durham alleges damages from its unsuccessful efforts to purchase Reidsville and Durham's suit addresses all of the issues and includes all of the parties, while Consolidated's does not. Consolidated cannot contend that the natural plaintiff was unwilling to litigate, and cannot contend that a declaration of its rights will be useful in helping Consolidated to determine whether to purchase Reidsville because it purports to have already done so.

**4. Appeal and Error— preliminary injunction—interlocutory order—no immediate appeal**

A trial court order granting a preliminary injunction prohibiting the sale of assets in the disputed sale of a soft drink bottling company was an interlocutory order not properly before the Court of Appeals. No substantial right is affected by the order, which merely prevents Consolidated from disposing of the assets of Reidsville which it had purportedly purchased and the business operations in which Consolidated engaged prior to the purchase are not impacted. Reidsville's right to rent or sell a few remaining items of real property does not constitute a substantial right within the context of the multi-million dollar sale of the vast majority of its assets. Furthermore, even assuming that these are substantial rights, they have at most been delayed, not lost, and the court provided for protection of those rights by requiring bonds.

**5. Venue— sale of company—intangible assets**

The trial court did not err by denying a motion to dismiss or transfer pursuant to N.C.G.S. § 1-76(4) an action arising from the sale of a soft drink bottling company where the company being sold contended that it was an action to recover personal property, but the specific performance claim which arguably sought personal property was not the sole or primary relief requested, as required by the statute. Furthermore, the assets sought in the specific performance claim largely include intangible assets such as stock, good will, contract rights, consumer lists, and exclusive sales territory. Intangible personal property is not subject to the venue requirements of N.C.G.S. § 1-76(4).

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

Appeal by Defendant in COA99-1369 (Mecklenburg County No. 99 CVS 6062) from order entered 18 August 1999 by Judge Dennis J. Winner in Mecklenburg County Superior Court. Appeal by Defendants in COA99-1372 (Durham County No. 99 CVS 2459) from orders entered 7 July 1999 and 28 July 1999 by Judge Orlando F. Hudson, Jr., and 19 July 1999 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. Heard in the Court of Appeals 18 September 2000.

Pursuant to N.C.R. App. P. 40 and motion to consolidate by defendant-appellant in COA99-1369, which we granted 28 December 1999, COA99-1369 and COA99-1372 were consolidated for hearing.

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by Kiran H. Mehta and Anne M. Package for plaintiffs-appellees in COA99-1369 and defendants-appellants in COA99-1372.*

*Moore & Van Allen, P.L.L.C., by Lewis A. Cheek and Pamela A. Wachter for defendant-appellant in COA99-1369 and plaintiff-appellee in COA99-1372.*

*Wishart, Norris, Henninger & Pittman, P.A., by Robert J. Wishart and Pamela S. Duffy for defendants-appellants in COA99-1372.*

FULLER, Judge.

Defendant in COA99-1369, Durham Coca-Cola Bottling Company (Durham), appeals from an order denying its motion to dismiss the declaratory judgment claims brought by plaintiff in that lawsuit, Coca-Cola Bottling Company Consolidated (Consolidated). We reverse and remand with instructions to the trial court to grant Durham's motion to dismiss. Defendants in COA99-1372, Reidsville Coca-Cola Bottling Company (Reidsville) and Consolidated, appeal from various orders of the trial court. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The facts underlying these two proceedings are as follows. Durham, seeking to purchase Reidsville, submitted a letter to Reidsville dated 26 February 1999 entitled "Offer to Purchase." This letter outlined the terms and provisions for Durham's proposed purchase of Reidsville. On 3 March 1999, Fred Busick, the president of Reidsville, responded by signing this letter under the language "Accepted and Agreed" and returning it to Durham. In addition, all of the shareholders and directors of Reidsville signed an attached docu-

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

ment entitled "Acceptance," indicating their approval of Durham's proposal to purchase Reidsville. This document was also returned to Durham. On 31 March 1999, having discovered that Consolidated was actively engaged in efforts to purchase Reidsville, Durham sent a letter to Consolidated asserting that Consolidated would be interfering with the contractual relationship between Durham and Reidsville if it pursued efforts to purchase Reidsville. On 13 April 1999, Durham filed a lawsuit against Reidsville in Durham County (the first Durham suit). In this suit, Durham sought specific performance of the allegedly binding contract between Durham and Reidsville, claimed breach of the alleged contract by Reidsville, and sought injunctive relief to prevent Reidsville from selling or disposing of its assets.

On 19 April 1999, Consolidated filed a lawsuit in Mecklenburg County (the Mecklenburg suit) naming Durham and Reidsville as defendants, and seeking a declaratory judgment and specific performance by Reidsville. The complaint in the Mecklenburg suit alleges that Consolidated and Reidsville are parties to two separate written agreements predating Durham's 26 February 1999 offer to purchase Reidsville. The first of these, a "Sub-Bottler's Contract," dated 30 June 1949, purports to prohibit Reidsville from selling its bottling rights without the written consent of Greensboro Coca-Cola Bottling Company, allegedly a predecessor of Consolidated. The second of these agreements, a "Right of First Refusal" contract, dated 1 April 1988, purports to grant to Consolidated a right of first refusal upon the sale of Reidsville's stock and bottling rights. The complaint in the Mecklenburg suit also alleges that Consolidated made an offer to purchase Reidsville, and that Reidsville accepted the offer, on 24 February 1999, two days prior to Durham's 26 February 1999 offer.

Consolidated set forth two claims for relief in its original complaint in the Mecklenburg suit. In its first claim for relief Consolidated requested a declaratory judgment, stating that "[t]here exists an actual, justiciable controversy as to the rights of Consolidated and Durham in connection with Reidsville, as well as the rights of Consolidated to pursue its acquisition of Reidsville free of threats of litigation from Durham." In its second claim for relief, Consolidated sought specific performance by Reidsville pursuant to the alleged agreements between them.

Consolidated purportedly purchased Reidsville on 16 May 1999. On 21 May 1999, the court in the first Durham suit granted Durham's request for a Temporary Restraining Order (TRO) against Reidsville.

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

On 24 May 1999, Consolidated took a voluntary dismissal without prejudice of all claims against Reidsville in the Mecklenburg suit. This served to dismiss Consolidated's second claim for relief, namely specific performance by Reidsville, leaving only the declaratory judgment claim. On 25 May 1999, Consolidated amended its complaint, requesting declaratory judgment as to three issues: (1) whether Consolidated has tortiously interfered with any contractual rights between Durham and Reidsville; (2) whether Durham has an enforceable contract to purchase Reidsville; and (3) whether Consolidated was justified in acquiring, and is justified in continuing to operate, Reidsville.

After learning of the purported purchase of Reidsville by Consolidated, Durham dismissed the first Durham suit without prejudice on 28 May 1999 and filed a second suit against Reidsville and Consolidated in Durham County on the same day (the second Durham suit, or the Durham suit). In its complaint in the second Durham suit, Durham alleges that: (1) it is entitled to specific performance by Reidsville of the alleged contract between Durham and Reidsville, and is also entitled to specific performance by Consolidated to the extent Consolidated now owns assets formerly held by Reidsville; (2) Consolidated has tortiously interfered with Durham's alleged contract with Reidsville; (3) Reidsville has breached the alleged contract with Durham; and (4) Durham is entitled to injunctive relief against both Reidsville and Consolidated to prohibit the sale of Reidsville assets. Durham was granted a TRO against Consolidated and Reidsville on 28 May 1999.

On 2 June 1999, Reidsville moved for removal of the Durham suit pursuant to N.C.G.S. § 1-76(4) (1999), contending that the suit seeks recovery of personal property and must be brought in the county in which the property is maintained. On 4 June 1999, Consolidated moved to dismiss or stay the Durham suit pursuant to N.C.R. Civ. P. 13(a), alleging that Durham's claims in the suit were compulsory counterclaims in the pending Mecklenburg suit. The trial court in the Durham suit subsequently denied these motions, and granted a preliminary injunction against Consolidated and Reidsville. Consolidated and Reidsville appeal from these orders.

On 28 June 1999, Durham moved to dismiss the Mecklenburg suit pursuant to N.C.R. Civ. P. 12(b)(1) and 12(b)(6), contending that the issues are not appropriate for a declaratory judgment proceeding. On 18 August 1999, the trial court granted Durham's motion to dismiss as to the portion of the complaint seeking a declaratory judgment that

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

Consolidated has not tortiously interfered with any contractual relationship between Durham and Reidsville. However, the trial court denied Durham's motion to dismiss as to the portion of the complaint seeking a declaratory judgment that the letters exchanged between Durham and Reidsville did not form a binding contract. Durham appeals from the order of the trial court to the extent it denied Durham's motion to dismiss. We have consolidated the two proceedings in order to address all of the issues.

## II. THE MECKLENBURG SUIT

### A. Motion to Dismiss Durham's Appeal

Initially, we address whether Durham's appeal in the Mecklenburg suit is properly before us. Consolidated has filed a motion to dismiss the appeal on the grounds that it is interlocutory. Durham contends that although the appeal is interlocutory, it is properly before this Court because it affects a "substantial right" pursuant to N.C.G.S. §§ 1-277(a) and 7A-27(d)(1) (1999). While we agree that the appeal is interlocutory, we need not determine whether the trial court's order affects a substantial right because we have elected in our discretion to treat the purported appeal as a petition for writ of certiorari and to address the merits of the appeal. *See* N.C.R. App. P. 21(a)(1); N.C.G.S. § 7A-32(c) (1999). Accordingly, Consolidated's motion to dismiss Durham's appeal is denied.

### B. Issues Remaining Pursuant to Consolidated's Claim for Declaratory Judgment

In its amended complaint, Consolidated purports to seek declaratory judgment as to three separate issues: (1) whether Consolidated has tortiously interfered with any contractual rights between Durham and Reidsville; (2) whether Durham has an enforceable contract to purchase Reidsville; and (3) whether Consolidated was justified in acquiring Reidsville. In fact, only issues (1) and (2) need be considered since judgments as to these two issues would logically resolve issue (3). This conclusion is based on the following reasoning: if, on the one hand, the alleged contract between Durham and Reidsville is not enforceable, it follows that Consolidated would have been justified in acquiring Reidsville; if, on the other hand, the alleged contract is enforceable, then a judgment as to whether Consolidated's actions constituted tortious interference would determine whether Consolidated was justified in acquiring Reidsville. Furthermore, issue (1) is not before us because the trial court granted Durham's motion

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

to dismiss as to this issue, and Consolidated has not appealed from that portion of the trial court's order. Thus, there is only one viable issue remaining pursuant to Consolidated's declaratory judgment claim, namely whether Durham has an enforceable contract to purchase Reidsville. We note that this conclusion is consistent with the trial court's description of the remaining issues in its 18 August 1999 order.

## C. Consolidated's Standing to Seek a Declaratory Judgment

[1] Durham contends that Consolidated cannot maintain a declaratory judgment suit to determine the validity of a contract to which it is not expressly a party. Consolidated, on the other hand, contends that there is no such general prohibition, and that a declaratory judgment suit is appropriate under the present circumstances. At the outset, we agree with Consolidated that there is no general rule prohibiting an entity from bringing a declaratory judgment suit to determine the validity of a contract to which it is not expressly a party.

To begin with, § 1-254 of our Declaratory Judgment Act itself provides that "[a]ny person interested under a . . . written contract . . . or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." N.C.G.S. § 1-254 (1999). Furthermore, it is well-established that the purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations," *Walker v. Phelps*, 202 N.C. 344, 349, 162 S.E. 727, 729 (1932), and that the Act "is to be liberally construed and administered." *Id.* Addressing the requirements for jurisdiction in a declaratory judgment suit, our Supreme Court has stated:

> It is required only that the plaintiff shall allege in his complaint and show at the trial, that a real controversy, arising out of [the parties'] opposing contentions as to their respective legal rights and liabilities under a deed, will or contract in writing . . . exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure.

*Light Co. v. Iseley*, 203 N.C. 811, 820, 167 S.E. 56, 61 (1933). A plaintiff need only show the existence of some claim which "disturbs the

576        IN THE COURT OF APPEALS

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

title, peace, or freedom of the plaintiff," or which, "by casting doubt, insecurity, and uncertainty upon the plaintiff's rights or status, damage[s] his pecuniary or material interests." Edwin M. Borchard, *Declaratory Judgments*, at 39 (2d ed. 1941). Therefore, the fact that Consolidated is not expressly a party to the contract at issue does not necessarily preclude it from bringing a declaratory judgment suit. A party who seeks a declaratory judgment as to the validity of a contract need only have some cognizable interest under the contract. *See Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 660, 507 S.E.2d 923, 926 (1998) (holding that a party seeking to have a written contract construed by way of a declaratory judgment must have an interest thereunder).

Consolidated purports to have purchased Reidsville, and for this reason purports to own most of Reidsville's assets. If the alleged contract between Durham and Reidsville is, in fact, enforceable, Consolidated may find that it has also purchased some liability to Durham along with its purported purchase of Reidsville. If Reidsville is at some point found to have breached a contract with Durham, Durham may have a claim to some of the assets which now purportedly belong to Consolidated. Simply put, it appears to us that Consolidated does have a cognizable interest under the alleged contract between Durham and Reidsville as a result of having purportedly purchased Reidsville. Thus, we do not agree with Durham's contention that Consolidated is precluded from maintaining this declaratory judgment suit simply because Consolidated seeks to determine the validity of a contract to which it is not expressly a party.

**D. Discretion to Render a Declaratory Judgment**

**1. Background for Analysis**

[2] Section 1-257 of our Declaratory Judgment Act, entitled "Discretion of court," provides that a court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." N.C.G.S. § 1-257 (1999). This provision of our General Statutes has been cited in only a small handful of cases, and has, to date, not been the subject of any significant consideration by this Court or our Supreme Court. As a result, there is sparse precedent in our case law to provide guidance regarding G.S. § 1-257.

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

However, an examination of its history reveals that G.S. § 1-257 is based upon § 6 of the 1922 Uniform Declaratory Judgment Act. While the federal equivalent of our State's Declaratory Judgment Act, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1999), does not expressly incorporate § 6 of the Uniform Act as our State's Act does, the federal courts have long relied upon § 6 of the Uniform Act when addressing a federal court's discretion to issue declaratory judgments. *See, e.g., Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). The federal courts have consistently applied the Federal Act with the presumption that a trial court is not obligated to render a declaratory judgment, but may, in its discretion, decide to render a declaratory judgment when it appears that doing so would further the objectives of the Act. *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 132 L. Ed. 2d 214, 223 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

The issue typically arises where: (1) a party brings a declaratory suit in federal court pursuant to the Federal Act seeking to address issues that are part of a larger underlying controversy; and (2) the natural plaintiff in the underlying controversy has already filed a suit in state court, or is planning to do so, to address all of the various issues in the underlying controversy. The party bringing the declaratory suit in federal court would naturally be the defendant in the underlying controversy, but adopts the role of the plaintiff in the declaratory suit. Because this situation arises fairly frequently, the federal courts have often been called upon to address in depth the circumstances in which it is appropriate for a trial court to refuse to entertain a declaratory suit. Although this Court is not bound by these federal cases, *see Sharpe v. Park Newspapers of Lumberton*, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986), we find the approach taken by the federal courts on this issue to be logical and persuasive. Therefore, as we have in the past, we deem it appropriate to examine federal court decisions addressing this declaratory judgment issue. *See id.*

## 2. Standard of Review

Until 1995, the federal circuit courts were divided on the applicable standard in reviewing a trial court's decision to grant, or refuse to grant, declaratory relief. However, this issue was resolved by the United States Supreme Court in *Wilton*, in which case the Court held that a trial court's decision to grant, or refuse to grant, declaratory

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

relief is reviewed for abuse of discretion. The Court explained that the Declaratory Judgment Act is best effectuated if trial courts are vested "with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton*, 515 U.S. at 289, 132 L. Ed. 2d at 225. Thus, in the instant case, we review. the trial court's order denying Durham's motion to dismiss pursuant to an abuse of discretion standard.

## 3. Guiding Principles

Federal courts have long agreed that declaratory judgment suits should be entertained by a trial court where the declaratory relief sought by the plaintiff (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, *Declaratory Judgments*, at 299, *cited with approval in Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996); *Grand Trunk R. Co. v. Consol. R. Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *Quarles*, 92 F.2d at 325. These two fundamental principles require, first of all, consideration of whether the declaratory proceeding will settle the entire underlying controversy. The declaratory remedy should not be invoked "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Quarles*, 92 F.2d at 325. This is especially so where a separate suit has been filed, or is likely to be filed, that will more fully encompass the scope of the entire controversy. *See Poston*, 88 F.3d at 258 (affirming decision of trial court to dismiss declaratory judgment suit because it would settle only part of controversy while pending state litigation could resolve entire matter). The interests of judicial economy and efficiency weigh in favor of suits that will settle all of the issues in the underlying controversy. *See Mitcheson v. Harris*, 955 F.2d 235, 239 (4th Cir. 1992) ("[I]t makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" (quoting *Quarles*, 92 F.2d at 325)).

These principles also call for consideration of the usefulness of a declaratory suit in light of the surrounding circumstances. A declaratory proceeding can serve a useful purpose where the plaintiff seeks to clarify its legal rights in order to prevent the accrual of damages, or seeks to litigate a controversy where the real plaintiff in the controversy has either failed to file suit, or has delayed in filing.

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

However, a declaratory suit should not be used as a device for "procedural fencing." *See Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994). A defendant in a pending lawsuit should not be permitted to bring a declaratory suit involving overlapping issues in a different jurisdiction as a strategic means of obtaining a more preferable forum. *See BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995). Otherwise, the natural plaintiff in the underlying controversy would be deprived of its right to choose the forum and time of suit. *See id.* Furthermore, it is inappropriate for a potential tortfeasor to bring a declaratory suit against an injured party for the sole purpose of compelling the injured party "to litigate [its] claims at a time and in a forum chosen by the alleged tortfeasor." *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir.), *cert. denied*, 395 U.S. 959, 23 L. Ed. 2d 745 (1969).

We also note that in situations in which two suits involving overlapping issues are pending in separate jurisdictions, priority should not necessarily be given to a declaratory suit simply because it was filed earlier. Rather, if the plaintiff in the declaratory suit was on notice at the time of filing that the defendant was planning to file suit, a court should look beyond the filing dates to determine whether the declaratory suit is merely a strategic maneuver to achieve a preferable forum. *See Poston*, 88 F.3d at 258 ("[A]lthough the federal action was filed first, we decline to place undue significance on the race to the courthouse door, particularly in this instance where [the plaintiff] had constructive notice of [the defendant's] intent to sue."); *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (holding that plaintiff should not be permitted to gain precedence in time and forum by filing a declaratory action which is merely anticipatory of a parallel state action).

### E. Consolidated's Declaratory Judgment Suit

[3] The underlying controversy in the instant case involves three parties: Durham, Reidsville, and Consolidated. The three legal issues in this controversy are: (1) whether the letters exchanged between Durham and Reidsville, and the surrounding circumstances, constitute a binding contract for the sale of Reidsville to Durham; (2) whether Reidsville has breached a contract with Durham; and (3) whether Consolidated has tortiously interfered with a contractual relationship between Durham and Reidsville. The natural plaintiff in this controversy is Durham, since Durham has been unsuccessful in its efforts to purchase Reidsville and alleges damages as a result. The natural defendants are Reidsville and Consolidated, whose actions

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

may have caused the alleged damages. Neither Consolidated nor Reidsville has any claim against Durham, since neither claims to have been injured by Durham.

A declaration in the Mecklenburg suit would only settle one small piece of the larger underlying controversy. For example, a declaration that the alleged contract between Durham and Reidsville is binding would not determine whether Reidsville breached the contract, and would not determine whether Consolidated tortiously interfered with this contract. In addition, as the declaratory proceeding now stands, Reidsville is not a party, and, thus, any declaration as to Reidsville's legal rights and status would be ineffectual. The Durham suit, however, addresses all of the issues and includes all of the parties involved in the underlying controversy. A declaratory remedy should not be invoked "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Quarles*, 92 F.2d at 325. We believe that allowing the Mecklenburg suit to proceed would conflict with the interests of judicial economy and efficiency.

Furthermore, Consolidated cannot argue that the declaratory suit is useful on the grounds that the natural plaintiff in the controversy, Durham, failed to initiate litigation or delayed in initiating litigation. When Consolidated filed the declaratory suit on 19 April 1999, it was well aware that Durham would likely sue Consolidated for tortious interference with a contractual relationship if Consolidated interfered with Durham's agreement to purchase Reidsville. Consolidated had not yet purchased Reidsville, and, as a result, Durham had no reason, at that time, to bring a tortious interference suit against Consolidated.

Consolidated also knew that Durham had already filed suit in Durham County against Reidsville seeking specific performance of the alleged contract between Durham and Reidsville. Thus, Consolidated cannot contend that the natural plaintiff, Durham, was unwilling to litigate the controversy. Although it could have, Consolidated chose not to intervene in the first Durham suit. Instead, it filed a separate suit involving overlapping issues, including whether a contract was formed between Durham and Reidsville as a result of the letters exchanged between them.

In addition, Consolidated cannot argue that a declaration of its rights will be useful in helping Consolidated to determine whether to purchase Reidsville, since Consolidated purports to have already purchased Reidsville. The only way in which the Mecklenburg suit

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

may be useful to Consolidated is by allowing Consolidated to avoid litigating the controversy in Durham County. We cannot condone using the Declaratory Judgment Act to obtain a more preferable venue in which to litigate a controversy. Such "procedural fencing" deprives the natural plaintiff of the right to choose the time and forum for suit. Furthermore, the fact that Consolidated's declaratory suit was filed prior to the second Durham suit is not dispositive. To hold otherwise would be to encourage a race to the courthouse in situations in which a potential defendant anticipates litigation by the natural plaintiff in a controversy.

After careful consideration, we conclude that Consolidated's Declaratory Judgment suit should be dismissed pursuant to G.S. § 1-257. We reverse the trial court's order of 18 August 1999 and remand for entry of an order granting Durham's motion to dismiss.

### III. THE DURHAM SUIT

On appeal in the Durham suit, Consolidated assigns error to the trial court's 7 July 1999 order denying defendants' motion to dismiss or stay pursuant to N.C.R. Civ. P. 13(a) on the grounds that Durham's claims are compulsory counterclaims in the prior pending Mecklenburg lawsuit. Because we have determined that the Mecklenburg suit should be dismissed pursuant to G.S. § 1-257, that suit is no longer pending and Consolidated's motion to dismiss or stay in the Durham suit is moot. This assignment of error is overruled.

[4] Next, Consolidated and Reidsville contend the trial court erred in granting Durham's motion for preliminary injunction in its order of 7 July 1999. Consolidated and Reidsville correctly concede that the grant of a preliminary injunction is interlocutory in nature, but argue that the issue is properly before us on appeal because the injunction affects a substantial right pursuant to G.S. §§ 1-277(a) and 7A-27(d)(1). It is well-established that an interlocutory order is appealable under the "substantial right" exception where (1) the right itself is substantial, and (2) the order deprives the appellant of a substantial right which will be lost if the order is not reviewed before final judgment. *See J & B Slurry Seal Co. v. Mid-South Aviation,* Inc., 88 N.C. App. 1, 5-6, 362 S.E.2d, 812, 815 (1987). Reidsville argues that certain real property not purchased by Consolidated, including an office, a warehouse, and two residential rental properties, are subject to the preliminary injunction, and that the injunction affects a substantial right because it prevents Reidsville from renting or selling

COCA-COLA BOTTLING CO. CONSOL. v. DURHAM COCA-COLA BOTTLING CO.

[141 N.C. App. 569 (2000)]

this real property. Consolidated argues that the preliminary injunction affects its substantial right to operate its "entire business, including the portion purchased from Reidsville."

As to Consolidated's argument, the preliminary injunction merely prevents Consolidated from selling or otherwise disposing of the Reidsville assets it has purportedly purchased. Any and all business operations in which Consolidated engaged prior to the alleged purchase of Reidsville are not impacted by the injunction, and we fail to see how such an injunction can accurately be said to affect a substantial right by preventing Consolidated from operating its "entire business." Nor are we persuaded by Reidsville's argument that the right to rent or sell a few remaining items of real property constitutes a substantial right within the context of a multi-million dollar sale of the vast majority of its assets.

However, even assuming that the rights claimed by Reidsville and Consolidated are substantial rights, there has been no showing that these rights will be lost if the order granting a preliminary injunction is not reviewed before final judgment. These rights still exist and, at most, have been temporarily delayed in order to maintain the status quo during the litigation. Furthermore, the trial court has provided protection for defendants' rights by requiring Durham to post security bonds in the amount of $50,000.00 for Consolidated and $25,000.00 for Reidsville. We 'also note that, to the extent that the preliminary injunction does inconvenience Reidsville and Consolidated while in effect, the interests of these parties would best be served by a prompt remand of the Durham suit for further proceedings and a resolution on the merits. We hold the trial court's interlocutory order granting a preliminary injunction is not properly before us.

[5] Finally, Reidsville assigns error to the trial court's order denying its motion to dismiss or transfer pursuant to G.S. § 1-76(4). This statute requires that lawsuits for recovery of personal property must be brought in the county in which the subject of the suit, or some part thereof, is situated when recovery of the property itself is the sole or primary relief demanded. G.S. § 1-76(4). Although this is an interlocutory order, appeal from this order is not premature because Reidsville appeals from the denial of a motion for a change of venue as a matter of right pursuant to G.S. § 1-76(4). *See Klass v. Hayes*, 29 N.C. App. 658, 660, 225 S.E.2d 612, 614 (1976).

Reidsville argues that the Durham suit is a proceeding to recover personal property and must be brought in Guilford County because

the operating assets of Reidsville were moved to Guilford County upon the purchase by Consolidated. We disagree. The specific performance claim, pursuant to which Durham arguably seeks to recover personal property, is neither the sole nor the primary relief requested in the Durham suit, as required by G.S. § 1-76(4). Furthermore, the assets Durham seeks to recover pursuant to the specific performance claim largely include intangible assets such as Reidsville's stock, good will, contract rights, consumer lists, and exclusive sales territory. Intangible personal property is not subject to the venue requirements of G.S. § 1-76(4). *See Flythe v. Wilson*, 227 N.C. 230, 233, 41 S.E.2d 751, 752 (1947). We find no error in the trial court's denial of the motion to dismiss or transfer pursuant to G.S. § 1-76(4). This assignment of error is overruled.

As to the judgment in 99CVS6062, reversed.

As to the judgment in 99CVS2459, affirmed.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.